***********
The Full Commission reviewed this matter based upon the record of the proceedings before Deputy Commissioner Stanback, and the briefs and oral arguments on appeal. Based upon the assignments of error, the plaintiff has not shown good ground to amend the holding of the Deputy Commissioner. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 9 April 2001 as:
 STIPULATIONS
1. This matter is properly before the Commission, an Employer/Employee relationship existed between the Plaintiff Alvin Smith and the Defendant McDowell County at all relevant times, and all necessary parties are properly joined. The parties further stipulate that Sedgwick CMS of the Carolinas is the workers compensation administrator on the risk.
2. As established by a Form 22 wage chart submitted by the Defendants, the Plaintiff's average weekly wage as of the time of the alleged injury on July 20, 1992 was $327.59, resulting in a compensation rate of $218.39.
3. The Plaintiff suffered an injury by accident arising out of and in the course and scope of his employment with the Defendant on July 20, 1992, this being a blow to his abdominal area while attempting to remove a jammed object from the blade of the bulldozer that he was operating.
4. Plaintiff was out of work due to his injury by accident from July 21, 1992 through August 2, 1992, and received payment for 6/7 week of temporary total disability.
5. Plaintiff has been continuously out of work since December 31, 1992, and has performed no gainful employment since that date.
6. The parties stipulate that the following exhibits should be entered into evidence, the same being either records filed with the Industrial Commission, or medical records admitted into evidence as records maintained in the regular course of activity of the physicians or institutions identified:
1. I.C. Form 18.
2. I.C. Form 19.
3. I.C. Form 21.
4. I.C. Form 28B.
5. I.C. Form 33.
6. I.C. Form 33R.
7. I.C. Form 22.
8. July 20, 1992 emergency room report, McDowell Hospital (4 pp.).
9. Joseph Y. Chung, MD, office notes (6 pp.).
10. R. M. Dioquino, MD, office notes (9 pp.).
 11. August 19, 1993 pulmonary function lab exercise stress test, Memorial Mission Hospital (1 p.).
12. David Troxler, MD, office notes and lab reports (22 pp.).
13. Sloop Memorial Hospital records (51 pp.).
14. May 3, 1996 letter from James T. Woelfel, MD. (1 p.).
15. May 30, 1996 notes of W. Roger Domby, M.D. (3 pp.).
16. January 24, 1997 notes of Charles O'Cain, M.D. (2 pp.).
 17. Fredric D. Seifer, M.D. (Physician Specialty Care at Cannon Memorial Hospital) office notes (3 pp.).
18. Edward H. Perez, MD, office notes and correspondence (74 pp.).
 19. Mark Hellreich, MD, office notes, lab reports and correspondence (16 pp.).
 20. Office notes and related records of Charles Vasey, MD, including admission and discharge summaries from Memorial Mission Hospital (11pp.).
 21. Additional office notes of Edward H. Perez, MD, dated August 15, 2000 through April 30, 2001 (12pp.).
7. Due to his declining health, the plaintiff was unable to appear for the hearing of this matter, and therefore the transcript of his deposition taken on March 29, 2001 was submitted in lieu of his live testimony and is made part of the evidence herein.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of his deposition on March 29, 2001, Plaintiff was 73 years of age and was born on December 25, 1927. Plaintiff worked part-time for McDowell County in the landfill beginning in 1973. He began working full-time in 1985 and worked in the landfill until he voluntarily retired in December 1992. Plaintiff's decision to retire in December 1992 was made prior to his work-related injury.
2. On July 20, 1992, plaintiff sustained a compensable injury by accident within the course and scope of his employment when he was operating a bulldozer when a pallet got caught between the blade of the bulldozer and the radiator. While plaintiff was freeing the pallet, he injured his abdomen and was out of work until August 2, 1992. However, before his July 1992 injury, plaintiff had taken 130 hours of sick leave in 1992 and had taken 150 hours of vacation and sick leave in 1991.
3. Plaintiff testified that he came into contact with asbestos at varying intervals during the time he worked at the landfill. Allen Silver, the Public Works Director and plaintiff's supervisor, testified that he had worked for the County since 1982, and as the Public Works Director, his duties consisted of supervising waste disposal and the County garage. He testified that to his knowledge, the County had always disposed of asbestos properly and pursuant to government regulations. The regulations regarding asbestos disposal state that a separate hole must be dug and all asbestos put in special yellow bags and placed in these holes. The regulations require that an individual wanting to dispose of asbestos call and make a special appointment and then individuals in special suits place the asbestos in the holes, and thereafter, County employees use a bulldozer to cover the hole with dirt. Employees of the County never came into direct contact with the asbestos or the dust from the asbestos. The plaintiff indicated that he had no knowledge of special handling procedures for asbestos until he researched the issue himself, and that he was never specifically instructed to handle the asbestosis in any particular fashion. The undersigned finds plaintiff's testimony on this issue to be credible.
4. After his injury in July 1992, plaintiff was initially seen in the emergency room immediately following the accident. At that time, the doctor on call noted that plaintiff was presently on a breathing pill and had a history of chronic obstructive pulmonary disease ("COPD"). On physical examination, no hernia was identified and plaintiff was diagnosed with an abdominal wall strain.
5. Thereafter, plaintiff was seen by Dr. Joseph Y. Chung on July 24, 1992 for abdominal pain. On physical examination, Dr. Chung did not find a hernia but recommended obtaining a chest x-ray. On July 29, 1992, the chest x-ray indicated that plaintiff had COPD, and Dr. Chung again noted that plaintiff did not have a hernia. On August 20, 1992, Dr. Chung's physical examination again showed no hernia, but a pulmonary function test indicated that plaintiff had severe COPD.
6. On September 22, 1992, plaintiff was hospitalized under Dr. R.M. Dioquino's care for pain in his abdomen and his chest as well as for respiratory problems. Plaintiff was again diagnosed with severe COPD and mild hypoxemia. On March 12, 1993, Dr. Dioquino stated, as referenced in the medical records, that "Mr. Smith's respiratory problems did not arise from the blunt trauma of the abdomen. In short, the trauma of the abdomen and his COPD are independent of each other."
7. Plaintiff then began to see Dr. David Troxler at Asheville Pulmonary and Critical Care Associates, PA in May 1993 for his shortness of breath. Dr. Troxler has been board certified in pulmonary medicine since 1984 and board certified in critical care since 1991 or 1992 and has seen approximately 60 to 100 patients with asbestosis or asbestos related pleural disease. On plaintiff's initial visit, Dr. Troxler noted that plaintiff use to smoke one pack of cigarettes per day for most of his adult life and that his wife stated that plaintiff had a considerable problem with wheezing prior to the time he quit smoking. A chest x-ray showed a flattening of the diaphragms and the pulmonary function tests showed moderately severe COPD and air trapping, which is common with obstructive type processes.
8. In addition, a physical examination showed a ventral abdominal hernia, which Dr. Troxler stated was unrelated to plaintiff's respiratory difficulties. In December 1993, Dr. Troxler felt plaintiff was in a trial fibrillation and an EKG revealed a sinus rhythm with frequent PACs. In February 1994, Dr. Troxler diagnosed plaintiff with emphysema with a reduced diffusion capacity but stated that his condition appeared to be stable.
9. On November 13, 1995, Dr. Troxler wrote a letter to plaintiff's counsel stating that plaintiff had COPD, with a predominant component of emphysema based on a low diffusion capacity. He additionally stated that he did find that the COPD was in any way related to the injury which plaintiff sustained at work.
10. In July 1994, Dr. Woelfel surgically repaired plaintiff's hernia, and on May 3, 1996, Dr. Woelfel stated in a letter to plaintiff's counsel that it was very difficult to state with any certainty that plaintiff's hernia was caused by his injury in 1992, but did state that the possibility existed.
11. Plaintiff began to see Dr. Edward Perez, a chemical engineer and board certified physician in family practice and critical care, in October 1994 for an upset stomach and ear pain. Dr. Perez has continued to see plaintiff on a regular basis for his respiratory difficulties up until the present. Plaintiff was diagnosed with cardiomyopathy and had a heart attack in 1996, for which Dr. Perez has also treated plaintiff.
12. In August 2000, Dr. Perez mentioned in a letter to plaintiff's counsel that plaintiff had a history of asbestos exposure and that there appeared to be a correlation between this exposure and plaintiff's lung condition. Dr. Perez recommended a consultation with a pulmonary specialist, and as a result on November 30, 2000, plaintiff was seen by Dr. Mark Hellreich at Asheville Pulmonary and Critical Care Associates, PA. Dr. Hellreich is a board certified pulmonologist and has been certified in internal medicine as well as critical care.
13. In his initial report, Dr. Hellreich noted that based on his review of the plaintiff's chart, he had a greater than 100 pack year smoking history, and that plaintiff relayed to him that he had been exposed to asbestos from 1977 until 1992. Dr. Hellreich ordered and reviewed a chest x-ray, which appeared to have bulbous changes consistent with emphysema. There was bilateral scarring in both the lingula and the right middle lobe without any definite mass effect. There was also biapical pleural parenchymal scarring, right greater than the left, and evidence of hyperexpansion.
14. Pulmonary function tests were worse than previous studies done by his colleagues, and Dr. Hellreich felt that plaintiff's x-ray and pulmonary function tests, which showed no restriction, were more suggestive of severe emphysema and stated that he saw no real evidence of asbestosis. However, Dr. Hellreich did recommend obtaining a CT scan in order to help determine if in fact there was any fibrotic lung disease. The CT scan, which was performed on January 30, 2001, showed extensive honeycombing of both lungs with some abnormal interstitial linear thickening, but the CT scan showed no peripheral pleural septal thickening or subpleural nodules to suggest asbestosis. The radiologist felt that the appearance was not necessarily indicative of asbestosis. In addition, Dr. Hellreich personally reviewed the CT scan with another radiologist and both he and the other radiologist felt that there was no honeycombing and there was no pleural thickening or pleural calcification and that the predominant pattern was bulbous emphysema instead of asbestosis.
15. There is no competent medical evidence linking the plaintiff's hernia and his injury by accident of July 20, 1992.
16. As for plaintiff's breathing problems, none of the doctors who specialize in pulmonary medicine could relate plaintiff's respiratory problems with his abdominal strain. All of plaintiff's doctors testified that he has chronic obstructive pulmonary disease and emphysema, which are diseases normally attributed to cigarette smoking and causes shortness of breath. Both Dr. Troxler and Dr. Hellreich, board certified pulmonologists, opined and the undersigned so finds that plaintiff's COPD and emphysema were not caused by an abdominal strain.
17. In reference to plaintiff's heart condition, Dr. Troxler testified that plaintiff's heart condition could not have been caused by his abdominal strain. Additionally, Dr. Hellreich testified that an abdominal strain could not cause heart problems in an individual and that asbestosis could only cause right-sided heart problems, and here, plaintiff had left-sided cardiac problems suggesting that his heart condition was not related to his asbestosis. Accordingly, there is no evidence of record establishing medical causation between claimant's work-related injury and his hernia, heart condition or respiratory difficulties.
18. There is insufficient medical evidence in the record to establish that plaintiff suffers from asbestosis or any asbestos related occupational disease or that any alleged asbestos related disease is causally related to plaintiff's employment with the defendant-employer. Even though plaintiff's treating physician, Dr. Perez, is a well-qualified family practitioner, has been treating plaintiff for a number of years and is familiar with plaintiff's overall medical history and conditions, the pulmonary specialists who treated plaintiff are more qualified to give an opinion with respect to whether plaintiff suffers from asbestosis or asbestosis-related diseases and whether plaintiff's injury by accident was the cause of any of plaintiff's conditions. Therefore, greater weight is given to the opinions of those specialists.
19. Plaintiff is presently disabled as a result of his breathing problems, however his abdominal strain is not the cause of his breathing difficulties. Plaintiff's lung diseases of COPD and emphysema have resulted in plaintiff's inability to earn wages, and since these lung diseases were not caused by his alleged asbestos exposure or his abdominal strain, plaintiff is not disabled as a result of his compensable injury by accident. Consequently, plaintiff is not entitled to permanent and total disability benefits as a result of his compensable abdominal strain or asbestosis.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff suffered a compensable injury by accident while in the course and scope of his employment with the defendant-employer on July 20, 1992, resulting in an abdominal strain. N.C.G.S. § 97-2(6).
2. Plaintiff's injury by accident of July 20, 1992 is not causally related to plaintiff's conditions of COPD or emphysema, nor did it result in a hernia. N.C.G.S. §§ 97-53, 97-2(18).
3. Plaintiff did not contract asbestosis or any asbestos related disease as a result of his employment with the defendant-employer or as a result of the injury by accident of July 20, 1992. N.C.G.S. § 97-61.5.
4. Plaintiff has failed to prove, by the greater weight of the evidence, that he contracted any compensable occupational disease as a result of his employment with the defendant-employer or that his original compensable injury by accident resulted in any compensable occupational disease. Plaintiff is therefore not entitled to further benefits under the Workers' Compensation Act. N.C.G.S. §§ 97-53; 97-29.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner, and enters the following:
 ORDER
1. Under the law, Plaintiff's claim must be, and the same is DENIED.
2. The parties shall share the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER